**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


UNITED STATES OF AMERICA,

     Plaintiff,

                                          Criminal Case No. 93-CR-81042[1]

v.                                       Civil Case No. 08-CV-10111

                                        HONORABLE DENISE PAGE HOOD

TOMMY JOE BARROW (D-1),

     Defendant.

_____/


**MEMORANDUM OPINION AND ORDER**


I.     **BACKGROUND**

      This matter is before the Court on a Petition and Motion to Vacate and Set Aside Judgment

and Expunge the Record in the Nature of a Writ of Error *Coram Nobis* filed by Tommy Joe Barrow

("Barrow") on December 20, 2007.  A response and reply have been filed.

      On October 12, 1993, a 15-count indictment was returned by a Grand Jury against Barrow.

After a ten-day jury trial, on September 28, 1994, Barrow was acquitted by the jury on the following

four counts:  1984 income tax evasion, 26 U.S.C. § 7201 (Count Three); willfully filing false 1984

tax return, 26 U.S.C. § 7206 (Count Four); 1986 income tax evasion, 26 U.S.C. § 7201 (Count

Seven); and, willfully filing false 1986 tax return, 26 U.S.C. § 7206 (Count Eight).

      Barrow was found guilty by the jury on the remaining eleven counts:  false statements in

connection with a bank loan application, 18 U.S.C. § 1014 (Count One); bank fraud, 18 U.S.C. §

1344 (Count Two); 1985 income tax evasion, 26 U.S.C. § 7201 (Count Five); willfully filing false

---

    [1] This matter was assigned to the Honorable George E. Woods.  The undersigned is the successor
judge to Judge Woods' docket.

1985 tax return, 26 U.S.C. § 7206 (Count Six); 1987 income tax evasion, 26 U.S.C. § 7201 (Count Nine); willfully filing false 1987 tax return, 26 U.S.C. § 7206 (Count Ten); 1988 income tax evasion, 26 U.S.C. § 7201 (Count Eleven); willfully filing false 1988 tax return, 26 U.S.C. § 7206 (Count Twelve); and filing three false corporate income tax returns in 1988 (First Amended), 1988 (Second Amended), and 1989 (Amended) (Counts Thirteen to Fifteen).  On June 5, 1995, Barrow was sentenced to 21 months of imprisonment (concurrent terms), a fine of $11,000.00, more than $80,000.00 in restitution to the Internal Revenue Service ("IRS") and to Great Lakes Bancorp, and supervised release until February 5, 2000.

Barrow filed several post-verdict motions before the district court and appeals before the Court of Appeals for the Sixth Circuit.  The Sixth Circuit affirmed the district court's denial of his motion for new trial based on newly discovered evidence.  *See, Barrow v. United States,* Case No. 96-1687, 106 F.3d 400 (Table), 1997 WL 31427 (6th Cir. Jan. 27, 1997)(unpublished).  The Sixth Circuit also affirmed Barrow's convictions on direct appeal.  *See, United States v. Barrow,* Case Nos. 95-1686, 96-1577, 118 F.3d 482 (6th Cir. Jul. 2, 1997)(published).

Two motions to vacate sentence filed by Barrow before the district court were both denied by the district court.  *See, Barrow v. United States,* Case Nos. 95-75023 and 98-72879 (E.D. Mich.).  The Sixth Circuit denied a certificate of appealability as to Barrow's appeal of the district court's denial of the first 28 U.S.C. § 2255 motion.  *See, Barrow v. United States,* Case No. 96-1686 (6th Cir. Oct. 7, 1996)(Order unpublished).  As to the appeal of the second § 2255 motion claiming newly discovered evidence, the Sixth Circuit affirmed the district court's denial of the motion.  *See, Barrow v. United States,* Case No. 99-2229, 2001 WL 278676 (6th Cir. Mar. 13, 2001)(unpublished); *see also, Barrow v. United States,* Case No. 99-2230 (6th Cir. Dec. 14,

2

1999)(noting certificate of appealability granted in part and denied in part as to § 2255 and continuing case in Case No. 99-2229); *Barrow v. United States,* 531 U.S. 1114 (Jan. 16, 2001)(*cert. denied)*(Table).

In addition to the matters relating directly to the criminal case, Barrow filed civil rights lawsuits against the IRS agents and the Assistant United States Attorney prosecuting the criminal action against him alleging constitutional rights violations which were dismissed by the district court. *See, Barrow v. Richardson, et al.,* Case No. 95-75726 (E.D. Mich.)(Friedman) and *Barrow v. Bulik,* Case No. 96-70378 (E.D. Mich.)(Friedman). On appeal, the dismissal of the first civil rights lawsuit was affirmed by the Sixth Circuit. *See, Barrow v. Light et al.,* Case No. 96-1688, 1997 WL 253271 (6th Cir. May 14, 1997)(unpublished). The second civil rights lawsuit was dismissed by the Sixth Circuit for lack of prosecution. *See, Barrow v. Bulik,* Case No. 96-1689 (6th Cir. Jul. 26, 1996)(Order unpublished). Barrow also filed a lawsuit against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) *et seq.,* for negligently conducting an IRS criminal investigation, which was dismissed by the district court. *See, Barrow v. United States,* Case No. 97-70457 (E.D. Mich.)(Friedman). The Sixth Circuit affirmed the district court's dismissal of the FTCA action. *See, Barrow v. United States,* Case No. 97-1830 (6th Cir. Nov. 4, 1998)(unpublished).

The Sixth Circuit has set forth the facts underlying the criminal conviction and various arguments raised by Barrow in its opinions. *See, Barrow v. United States,* 1997 WL 31427 at *2-*7 (denial of motion for new trial appeal); *United States v. Barrow,* 118 F.3d at 485-94 (direct appeal). Briefly, Barrow, a certified public accountant, was the founder and controlling shareholder of the accounting firm, Barrow, Aldridge & Co. ("Barrow Aldridge"). *Barrow,* 118 F.3d at 485. Barrow

was also the sole proprietor of Complete Information Services ("CIS"), a data processing company. *Id.* He was elected to the Board of Directors of Detroit Central Hospital in 1982, becoming the chairperson in 1986. *Id.* The hospital was renamed New Center Hospital ("New Center") and ownership was transferred to a holding company, Central City Health Services ("Central City"). *Id.* Barrow Aldridge became the accountant for both New Center and Central City around 1986. *Id.* CIS performed computerized billing services for New Center by 1987. *Id.* Barrow was named the chief executive officer of both New Center and Central City by 1987. *Id.* Barrow's criminal conviction on the tax charges involved Barrow's positions and relationships with his accounting firm, New Center, Central City and CIS.

The present Writ of Error *Coram Nobis* raises nine claims:

> Claim I:      The IRS agent's admission that he lied by "plugging" petitioner's accounting firm's loan records and covered up the $88,738.67 of recorded income for which petitioner had been convicted constitutes a fundamental error of fact warranting *coram nobis* relief.

> Claim II:     The IRS' admission that they had been wrong during the criminal trial and that the 1985 alternative minimum tax for which petitioner had been convicted was in truth zero constitutes a fundamental error of fact and warrants *coram nobis* relief.

> Claims III-VI:      Ineffective assistance of trial counsel.

> Claims VII-VIII:  Ineffective assistance of appellate counsel.

> Claim IX:     The cumulative effect of the now known false testimony, tainted facts and prosecutorial misconduct so infected the fairness of petitioner's trial as to render the jury's verdict unreliable and amounted to a denial of due process as guaranteed by the Fifth Amendment to the Constitution of the United States.

(Petition, Table of Contents).

Barrow and Barrow Aldridge petitioned for redetermination of deficiencies and fraud penalties after Barrow's conviction in the criminal case. The civil trial before the Tax Court ended in August 20, 2004 and the Tax Court issued its opinion on November 25, 2008. *Barrow v. Commissioner of Internal Revenue,* Case No. 14551-02, T.C. Memo. 2008-264, 2008 WL 5000112 (U.S. Tax. Ct. Nov. 25, 2008). The Tax Court found in part in favor of the Commissioner and in part in favor of Barrow.

The Tax Court stated that at the criminal trial, the Government had the burden to establish willful tax evasion beyond a reasonable doubt but the jury was not required to return a verdict detailing which items of income Barrow had not reported. T.C. Memo. 2008-264, 2008 WL 5000112 at *12; *see, Kosinski v. C.I.R.,* 541 F.3d 671, 679 (6th Cir. 2008) and *Hickman v. C.I.R.,* 183 F.3d 535, 538 (6th Cir. 1999). The Tax Court noted that the Government during the criminal trial was not required to prove the *specific* amount of the underpayment, just that an underpayment of tax existed. *Barrow v. C.I.R.,* T.C. Memo. 2008-264, 2008 WL 5000112 at n. 12. The Tax Court noted that the Commissioner's burden before the Tax Court was to prove fraud by clear and convincing evidence, which is a lower standard than the Government's burden of proving willful evasion beyond a reasonable doubt. *Id.* at *12. The Tax Court held that Barrow was collaterally estopped from denying fraud for tax years 1985, 1987 and 1988 which were at issue during the criminal case. *Id.* at *13, *27. The Tax Court found that as to any *particular* underpayment for tax years 1987 and 1988, the Commissioner failed to prove that any *particular* underpayment was due to fraud. The Tax Court estimated that $500 in 1987 and 1988 was due to fraud for purposes of applying the fraud penalty and the 1985, 1987 and 1988 deficiencies were required to be computed

5

by the parties.  *Id.* at *27.  The Tax Court found that no part of the tax years 1984 or 1986 deficiencies was due to fraud.  *Id.*  As noted above, the jury acquitted Barrow of the tax evasion charges involving the 1984 and 1986 tax years.  The Tax Court noted that the controlling facts relevant to Barrow's criminal tax evasion are also the same as those the Commissioner in the civil tax case argued applied, at least with respect to Barrow's individual income tax deficiency not attributable to the new theory of corporate diversion.  *Id.* at *13.  The Tax Court observed that "there are no new facts that weren't available to the parties in the criminal case."  *Id.*  Although the Tax Court agreed with Barrow that the Government's position changed between the criminal case and the civil case before the Tax Court, it noted that, "there are relatively minor items of unreported income or incorrect expenses whose consequences for Barrow's tax liability are unaffected by the switch in government theories between the cases."  *Id.* at 12.[2]

Barrow claims that the Writ of Error *Coram Nobis* is based upon admissions by the agents of the IRS in the proceeding before the Tax Court.  Specifically, Barrow alleges that the IRS agent admitted that he had "lied" by "plugging"[3] in some numbers on Barrow's accounting firm's loan

---

[2] The Court finds troubling the Government's statement before the Tax Court that the Government in the criminal trial presented its case to an "unsophisticated jury" in a manner "so as to avoid any confusion the jurors may have had with the concept of double taxation."  T.C. Memo. 2008-264, 2008 WL 5000112 at *12.  This statement was made in support of the Government's changed theory of the case before the Tax Court.  Such a statement demeans the intelligence of the citizens who stand in judgment over their peers who are charged with serious crimes and may be facing loss of their constitutional right to liberty.  The United States Constitution established the right to a "trial by jury of criminal charges as a bedrock safeguard of the people's liberties."  *Jackson v. Denno*, 378 U.S. 368, 405 (1964).  The "Founders' great faith in jury trials" was based on "a belief that juries can be trusted to decide factual issues."  *Id*

[3] The IRS agent adjusted the journal entry with a certain number in order to balance the Barrow Aldridge general ledger.

6

account records.  Barrow also alleges that the IRS agent had covered up the income which had formed the basis of Petitioner's convictions for tax evasion and filing false tax returns for 1987, 1988 and for filing false amended corporate tax returns Forms 1120X.  Barrow further alleges that the IRS admitted that their calculation had been wrong during the criminal trial and that the 1985 alternative minimum tax ("AMT") for which Barrow had been convicted was zero.  Barrow claims that the IRS admitted that the AMT alleged, now admitted to be wrong, had been calculated using the original return and the $9,700.00 of unreported income had no effect and did not give rise to any additional tax.  (Petition, p. i)

## II.    ANALYSIS

### A.    Writ of Error *Coram Nobis* Standard

The writ of error *coram nobis* was used as a device for correcting fundamental errors in both civil and criminal cases at common law.  *United States v. Johnson*, 237 F.3d 751, 753 (6th Cir. 2001).  The writ was suspended in civil cases pursuant to Fed.R.Civ.P. 60(b).  *Id.*; *United States v. Morgan*, 346 U.S. 502, 506 (1954).  In criminal cases, the Supreme Court held that federal courts retained the power to issue the writ under certain circumstances based on the All Writs Act, 28 U.S.C. § 1651.  *Morgan,* 342 U.S. at 506.  A writ of error *coram nobis* may be used to vacate a federal conviction after a defendant has already served his sentence and relief under 28 U.S.C. § 2255 is unavailable.  *Johnson*, 237 F.3d at 753.  A writ of error *coram nobis* is an extraordinary writ. *Id.* at 755.  It is used only to review errors of the most fundamental in character which render the *proceedings themselves* invalid.  *Id.*  A defendant must demonstrate: 1) an error of fact; 2) unknown at the time of trial; 3) of a fundamentally unjust character which probably would have altered the

7

outcome of the challenged proceeding if it had been known.  *Id.*

Coram nobis relief is insufficient if the defendant is merely raising legal challenges concerning the validity of the convictions where the defendant had knowledge of the underlying facts at the time of trial. *Blanton v. United States,* 94 F.3d 227, 230 (6th Cir. 1996).  Arguments that were raised or could have been raised on direct appeal are not properly brought on a *coram nobis* petition which must be based on matters not appearing in the record. *United States v. Richard,* 221 F.3d 1337, 2000 WL 875369 (6th Cir. Jun. 19, 2000)(unpublished)(citing *United States v. Keane,* 852 F.2d 199, 202-03 (7th Cir. 1988)).  A defendant cannot use a *coram nobis* proceeding to renew claims previously rejected in a 28 U.S.C. § 2255 proceeding. *Willis v. United States,* 654 F.2d 23 (8th Cir. 1981).  Prejudicial errors and newly discovered evidence do not fall into the category of fundamental errors required to issue a  writ of error *coram nobis.  See, Moody v. United States,* 874 F.2d 1575, 1577 (11th Cir. 1989).

The writ cannot be used by a prisoner who is still in custody, even if § 2255 relief is no longer available because the prisoner failed to file a § 2255 motion before the one-year limitations period of the Anti-Terrorism and Effective Death Penalty Act, Pub.L. No. 104-32, 110 Stat. 1214 (1996).  *Id.*

   **B.**    **Claim I - The IRS agent's admission that he lied by "plugging" petitioner's accounting firm's loan records and covered up the $88,738.67 of recorded income for which petitioner had been convicted constitutes a fundamental error of fact warranting *coram nobis* relief.**

         **1.**    **Parties' Arguments**

Barrow claims that his convictions for the 1987 and 1988 income tax evasion and filing false amended corporate tax returns rested upon the jury's acceptance of the fact that Barrow failed to record $88,738.67 of his income in the books and records of the accounting firm.  Barrow argues

8

that during the Tax Court trial, the IRS agent who testified at the criminal trial, Wesley Bulik, admitted before the Tax Court that he had lied by "plugging" his analysis regarding the amount and that this testimony revealed a material fact which altered the facts controlling Barrow's conviction. Barrow states that Agent Bulik testified as to exhibit 277-P, a loan receivable/payable analysis prepared by Bulik.  (Petition, p. 27)  Bulik was questioned about the document, specifically, the terms "ADG or JE."  *Id.*  Bulik testified that he was "adjusting an journal entry."  *Id.*  Bulik testified that he "plugged the number ... to get the loan analysis to balance to the financial statements."  *Id.* Barrow argues that when Bulik "plugged" his analysis, he hid the two real entries which were in Barrow Aldridge's general ledger and tax return work papers which balanced the accounting firm's financial statements.  *Id.* at 28.

Barrow testified before the Tax Court that on the *debit* side to the loan account was the figure $88,738.67, which was the missing income.  *Id.*  This amount reduced Barrow's outstanding loans and crediting/increasing the accounting firm's income.  *Id.*  On the *credit* side was $35,000.00 which reduced the loans from Michigan National Bank.  *Id.*  Together, Barrow argues the two equaled $53,738.67 (debit $88,738.67 minus credit $35,000).  *Id.*   Bulik testified that he "plugged" that same amount, $53,738.67, into his analysis.  *Id.* at 30.  Barrow contends that Bulik's testimony shows that Bulik "lied" at the criminal trial which rendered Barrow's criminal trial fundamentally unfair.

Barrow further claims that he was denied access to his own records so that he could not show the jury at his criminal trial that he had in fact made the journal entry in his own records establishing that the $88,738.67 belonged to his accounting firm, and should not have been attributed to him as personal income.

9

The Government argues that Barrow was convicted of Counts Nine, Ten, Eleven and Twelve (fraudulent tax returns and tax evasion claims) based in part on Barrow's unreported income from New Center and Central City, written to him personally and deposited in his own personal account. Barrow was convicted of false corporate returns in Counts Thirteen, Fourteen and Fifteen, when he amended (in 1990) the Barrow Aldridge income tax returns to show that this personal income, $88,738.67, was instead Barrow Aldridge income. At the criminal trial, Barrow testified that he in fact received the funds from the hospital but that these payments represented repayment of outstanding loans Barrow had made to his accounting firm and, therefore, the payments made to him by the hospital were not taxable income. The Government argues that the jury rejected Barrow's "loan" defense and convicted Barrow on the false personal and corporate tax returns counts.

The Government argues that Barrow previously raised these arguments in post-verdict motions and on appeal. Barrow, after trial but before sentencing, found "new" or "additional" evidence regarding the mathematical "gap" between the closing balance for the corporation for 1989 and the opening balance for 1990. Barrow argued at sentencing that this "gap" supported his loan defense. The trial court rejected this argument. In one of his post-verdict motions for new trial, Barrow again argued that the "newly discovered evidence" regarding the loan defense entitled him to a new trial. The district court denied the motion for new trial and the Sixth Circuit affirmed the denial. *See, Barrow v. United States,* Case No. 96-1687, 106 F.3d 400 (Table), 1997 WL 31427 (6th Cir. Jan. 27, 1997)(unpublished); *Barrow v. United States,* Case Nos. 95-75023 and 98-72879 (E.D. Mich.); *Barrow v. United States,* Case No. 96-1686 (6th Cir. Oct. 7, 1996)(Order unpublished); and, *Barrow v. United States,* Case No. 99-2229, 2001 WL 278676 (6th Cir. Mar. 13, 2001)(unpublished).

The Government claims that the only new information Barrow presents from the trial before the Tax Court is Agent Bulik's testimony identifying an exhibit 277-P which was an analysis Bulik prepared regarding the loan account between Barrow and his accounting firm, Barrow Aldridge. In his Tax Court trial testimony, Bulik identifies an adjusting journal entry ("ADG" or "JE") he made in his analysis for the date 12/31/1989, explaining that he "plugged" this number in the analysis to make it reconcile with the records of Barrow Aldridge since there were inconsistencies in the general ledger records of Barrow Aldridge. (Petition, pp. 27, 29-30) The Government argues that exhibit 277-P presented before the Tax Court was Bulik's own analysis, not an exhibit presented at the criminal trial and was not part of Barrow Aldridge's records. The Government further argues that Bulik did not do anything else to alter the books and records of Barrow Aldridge. The Government notes that Bulik made no admission before the Tax Court that he "lied" at the criminal trial.

## 2.      Testimony Before the Tax Court

The Court finds that Barrow has failed to demonstrate that Bulik's testimony during the Tax Court proceedings was an error of fact "unknown at the time of trial." As the Tax Court noted, "[t]he controlling facts relevant to Barrow's criminal tax evasion are also the same as those the Commissioner argues apply in this case–at least with regard to part of Barrow's individual income tax deficiency not attributable to the new theory of corporate diversion. *And there are no new facts that weren't available to the parties in the criminal case.*" *Barrow v. C.I.R.,* T.C. Memo. 2008-264, 2008 WL 5000112 at * 13 (emphasis added). The Tax Court found that Bulik began investigating Barrow Aldridge's tax return for the year ending March 31, 1988, which later expanded to Barrow's personal taxes for 1984 through 1988. *Id.* at *7. The Tax Court further found that because Bulik

11

was not able to reconcile the return to the general ledger, he began a specific-items analysis for both Barrow Aldridge and Barrow personally for all the years involved in the audit, including a bank-deposits analysis to determine the CIS portion of Barrow's understatement. *Id.* As noted by the Tax Court, a specific-items analysis is a direct method of proof used when an IRS agent can find a taxpayer's sources of income. *Id.* at n. 5. "When the IRS can't find a taxpayer's sources of income, it uses an indirect method of proof such as an analysis of bank deposits." *Id.*

Although the Tax Court notes the Government's theory regarding income is different before the Tax Court from what the Government argued in the criminal case, the Tax Court made no finding in its opinion that the agents who testified during the Tax Court trial "lied" during the criminal trial. *Id.* at *12. The Tax Court also does not address Barrow's argument raised in the instant petition regarding exhibit 277-P and Bulik's testimony before the Tax Court that Bulik "plugged" the number in the analysis to reconcile the records of Barrow Aldridge. Barrow has not shown that during the Tax Court proceedings, Bulik admitted that he "lied" during the criminal trial. Bulik testified before the Tax Court regarding the numbers he used during his analysis of Barrow Aldridge's records. The document identified by Barrow during the Tax Court trial was Bulik's own analysis, exhibit 277-P, which was not in evidence at the criminal trial. Bulik's analysis during the criminal trial was subject to cross-examination by the defense. There is nothing new presented during the Tax Court proceedings regarding the Barrow Aldridge books, other than IRS Agent Bulik's analysis, exhibit 277-P, which was not part of Barrow Aldridge's records.

### 3.    Barrow's Access to Records During the Criminal Trial

According to Barrow, Bulik testified at the criminal trial that Bulik had analyzed Barrow Aldridge's loan account. Barrow claims that Bulik found no entry in the loan account which

12

reduced Barrow's outstanding loan to Barrow Aldridge and increased the income of Barrow Aldrige for the $88,738.67 of unreported income for 1987 and 1988. (Petition, p. 14) Barrow argues that because he was denied personal access to his own accounting firm's records, he was unable to show that he had indeed recorded a journal entry on the books of the accounting firm. Barrow claims he could only testify that he had intended to record the income as a reduction of Barrow's outstanding loans to Barrow Aldridge.

Barrow's argument raised in Claim I that he was denied access to his own records so he could not show that the $88,728.67 income belonged to the accounting firm has been raised before the trial court and the Sixth Circuit. The trial court denied Barrow's Motion for Certification for a New Trial Based Upon Newly Discovered Evidence raising this same issue. On appeal, the Sixth Circuit addressed the newly discovered evidence argument and Barrow's argument that he did not have access to his accounting firm's general ledger and other documents. The Sixth Circuit noted, "[i]n his brief, defendant does not explain specifically what 'records' he was not permitted to see, but in one of his briefs to the District Court in support of his motion for a new trial, he 'admits without hesitation that he had the general ledger' at the time of trial. Consequently, defendant cannot claim that the general ledger, or any evidence contained within it, is 'newly discovered' evidence." *Barrow v. United States,* 1997 WL 31427 at *3 The Sixth Circuit also noted that Barrow's allegation that he was denied personal access to his tax return work papers did not constitute "newly discovered" evidence because either defendant or his trial team had access to all of the documents which Barrow claimed established that the loan transaction occurred. *Id.* The Sixth Circuit held that Barrow had within his knowledge all of the facts and materials necessary to make this argument at trial. *Id.* The Sixth Circuit noted that Barrow's own expert during the

criminal trial, James Tassoni, a certified public accountant, submitted an affidavit indicating he had knowledge of the loan entries in the Barrow Aldridge books but he was never asked about these entries by the defense.  *Id.*

The Sixth Circuit was aware of Barrow's argument that the income actually constituted loan repayments from the accounting firm, stating, "[i]n other words, defendant asserted that the Hospital and Cental City paid the firm for his services and the firm used this income to repay defendant for loans he had made to the firm.  Defendant claimed that these transactions were evidenced in the firm's books.  The government's witness testified that he could not find any entries in the firm's books which supported defendant's claim."  *Id.*

Barrow himself testified at the criminal trial.  As he admitted in his brief before the trial court that he had the general ledger at the time of trial, Barrow could have identified to the jury the appropriate entries in the ledger to support the argument he now puts forth regarding the "debit" and "credit" side of the Barrow Aldridge entries.  Any entries regarding the "debit" and "credit" side of the Barrow Aldridge ledger were known to Barrow at the time of trial.  As the Sixth Circuit noted in its opinion affirming the denial of the motion for new trial based on newly discovered evidence,

> Additionally, during his own testimony, defendant could have explained his analysis of the books by using the exhibits; his brief in fact suggests that it would not have taken him long to find the alleged key entries.  We do not know why defense counsel chose not to pursue this defense theory, but it is not our role here to question that decision.  If anything, defendant has shown only a failure of due diligence in finding the alleged entries in the books before or during the trial.

*Id.*

The Sixth Circuit, in its opinion addressing Barrow's direct appeal of his conviction, noted that Barrow raised a claim of "newly discovered" evidence which demonstrated that the prosecution

lied during the criminal trial. The Sixth Circuit concluded it would not reconsider the "newly discovered" evidence issue because the issue was previously raised in Barrow's motion for new trial and addressed in the Sixth Circuit's earlier opinion affirming the district court's denial of the motion for new trial. *United States v. Barrow,* 113 F.3d at 494.

Claim I of the petition for writ of error *coram nobis* presents the same arguments raised by Barrow in prior proceedings before the trial court and the Sixth Circuit. Barrow has not demonstrated that there are errors of facts which were "unknown at the time of trial." *Johnson*, 237 F.3d at 755. Barrow is not entitled to the extraordinary writ.

> **C.    Claim II:  The IRS' admission that they had been wrong during the criminal trial and that the 1985 alternative minimum tax for which petitioner had been convicted was in truth zero constitutes a fundamental error of fact and warrants *coram nobis* relief.**

Barrow claims that the IRS now admits that the facts which had been presented at the time of Barrow's criminal trial were wrong. Specifically, Barrow claims that the alternative minimum tax ("AMT") amount used at trial was wrong and that the AMT is zero. Barrow also claims that the $9,700.00 of unreported income had created no tax whatsoever. Barrow argues that the AMT calculation by the IRS had not come from unreported income but from the IRS' improper calculation of the original tax return. Barrow asserts that the IRS used "business interest" in its calculation which the IRS knew should have been prohibited from an AMT calculation. Barrow claims that, at the 2004 United States Tax Court trial, IRS Agent Stephen Wernert admitted that the 1985 AMT deficiency of $5,474.47 alleged at the criminal trial had been wrong and that the AMT was zero. (Petition, pp. 30-31) Barrow also claims that Agent Bulik, recalled to the stand during the 2004 Tax Court trial, contradicted Robert Gardner's criminal testimony that the 1985 AMT could have been wrong. (Petition, p. 32)

In response, the Government argues that the only new information Barrow adds to support his claim that the AMT should have been zero is the testimony of IRS Agent Wernert during Barrow's 2004 Tax Court trial to determine Barrow's civil tax liability.  The Government claims Agent Wernert was not involved in the criminal investigation or trial but was apparently responsible for the subsequent civil audit that led to the 2004 trial before the Tax Court.  Agent Wernert's testimony at the 2004 Tax Court trial was that, during a meeting with Barrow and his lawyer, he had indicated that the AMT should have been zero based on the figures that were used at the criminal trial.  (Petition, p. 31)  The Government argues that Agent Wernert's testimony does not establish that the prior testimony by others during the criminal trial was false or insufficient to support a conviction for tax evasion.  The Government further argues that Agent Wernert's testimony also does not constitute newly discovered evidence since this theory was raised and rejected in Barrow's second motion for new trial and appeal of that motion.  The Government claims that Agent Wernert's testimony is another opinion on a relatively complex issue of tax law, which could have been raised during Barrow's criminal trial.  At Barrow's criminal trial, the Government asserts that Barrow did not object to the evidence presented by the Government nor did he seriously contest the AMT issue.  The defense, according to the Government, challenged the issue of criminal intent and did not challenge the evidence presented regarding Barrow's 1985 tax return.  It was only during several post-trial proceedings where Barrow challenged the Government's evidence regarding the 1985 tax return.

The Court finds that the testimony of Agents Wernert and Bulik during the 2004 Tax Court trial are not sufficient to constitute an error of fact or newly-discovered evidence to support an issuance of a writ of error *coram nobis*.  As noted during Agent Wernert's 2004 Tax Court

testimony, the evidence regarding Barrow's 1985 Tax Return and the resulting AMT calculation presented to Agent Wernert during the meetings between Agent Wernert and the defense, were all evidence presented and available to the defense at trial.  Specifically, Agent Wernert testified at the 2004 Tax Court trial, "[w]ell, the figures that were all that I had seen was what was in evidence in the criminal case."  (Petition, p. 31)  Agent Bulik also testified that the calculation was based upon the return as it was filed in 1985.  (Petition, p. 32)

The defense did not challenge Agent Gardner's calculations regarding the AMT and the existence of a tax deficiency at Barrow's criminal trial.  Barrow himself testified during the criminal trial, along with his own expert.  Although Agents Wernert and Bulik may have testified differently regarding the AMT tax calculation during the 2004 Tax Court trial,[4] the underlying evidence presented before the criminal trial and the 2004 Tax Court trial are the same, as noted by the Tax Court in its opinion.  *Barrow v. C.I.R.,* T.C. Memo, 2008-264, 2008 WL 5000112 at *13 ("And there are no new facts that weren't available to the parties in the criminal trial.").  The Tax Court found that as to the self-employment tax and the AMT, "Barrow admits that he failed to include the self-employment tax calculation when he filed his 1985 tax return, and that he was liable for the tax." *Id.* at 24.  The Tax Court noted that neither party chose to introduce the transcript of the criminal trial into evidence.  *Id.*  *7 and n. 7.  The documents used during the criminal trial were also introduced during the 2004 Tax Court trial.  (See Exhibits attached to Petition and Motion to Vacate and Set Aside Judgment.)

Barrow had the opportunity at the criminal trial to challenge Agent Gardner's AMT

---

[4] Other than quoting from the transcript to support arguments made in the motion, no transcript of the trial before the Tax Court was filed.

calculation but did not do so. Barrow did challenge the AMT calculation during various post-trial proceedings but both the district and appellate courts rejected Barrow's theories regarding the AMT calculations. The Court of Appeals, affirming the district court, found that Barrow had not exercised due diligence as to his own witness, noting that the recanted testimony of the witness was another version of previous testimony as to the AMT calculations. *Barrow v. United States,* 1997 WL 31427 at *4. "An affidavit by a recanting witness, when offered in support of a motion for a new trial, is viewed with extreme suspicion." *Id.* at *4 (citing *United States v. Chambers,* 944 F.2d 1253, 1264 (6th Cir. 1991)). The facts underlying the AMT calculations and the 1985 tax return were known to the defense at the time of trial. Barrow has not carried his high burden to show that he is entitled to *coram nobis* relief as to the AMT calculation and 1985 tax return issues.

### D.    Claims III-VIII:  Ineffective Assistance of Trial and Appellate Counsel Claims

Barrow alleges that his trial counsel, Clyde Pritchard, was ineffective because Mr. Pritchard: failed to adequately investigate the tax case; failed to affiliate with an experienced tax expert familiar with the components of an AMT calculation and thereby investigate the accuracy and source of the tax deficiencies; failed to petition the trial court to order the prosecutor to provide personal access to Barrow, himself, to Barrow's own ledgers, tax return work papers and adjusting journal entries prior to trial; failed to investigate the bank allegations regarding fraud when counsel did not contact the bank, its officials or any of the government's witnesses in advance of trial; and, failed to interview his expert, James Tassoni, in advance of trial. Barrow alleges that his appellate counsel, Carl Rubin, Alan Rubin and Gregory Lord of the law firm of Rubin & Rubin, P.C., were ineffective because they failed to raise meritorious issues on appeal preserved by post-trial counsel, Clarence B. Tucker, Sr. and Neal Nusholtz, and failed to raise the ineffective assistance of trial

18

counsel (Mr. Pritchard) claim on appeal.

The Government argues that Barrow's ineffective assistance of counsel claims have been rejected by the trial court and on appeal and that these claims fail to show a fundamental error in Barrow's conviction that is material to the validity of the criminal proceeding itself.

An ineffective assistance of counsel claim cannot be brought when the counsel at issue is still representing the defendant during those matters. *See, Blanton,* 94 F.3d at 231. Although a claim for ineffective assistance of counsel is not known at the time of trial, the factual claims that form a basis for ineffective assistance of counsel claim could be known at trial. The underlying factual basis of Barrow's ineffective assistance of counsel claims noted above have been addressed by the trial and appellate courts. In the context of a motion for new trial based on newly-discovered evidence, the Sixth Circuit has joined other circuits who have concluded that "evidence of ineffective assistance of counsel is not newly discovered evidence ... where the facts supporting the claim were within the defendant's knowledge at the time of trial." *United States v. Seago,* 930 F.2d 482, 489 (6th Cir. 1991).

Here, the underlying facts alleged by Barrow to support his ineffective assistance of counsel claims, such as the AMT calculations, access to documents at trial, unprepared expert witnesses, and, failure to investigate the criminal tax case, were within Barrow's knowledge at the time of trial. A counsel's "pursuit of an alternate theory which was not persuasive does not, after the jury's verdict, constitute newly discovered evidence of ineffective assistance of counsel." *Seago,* 930 F.2d at 490. A defendant's "failure to appreciate the legal significance of his trial counsel's development of an alternate defense theory does not transform evidence discussed prior to trial into 'newly discovered' evidence. ..." *Id.* A claim belatedly pursued does not constitute newly discovered

evidence. *Id.* The Court finds that Barrow's ineffective assistance of trial and appellate counsel claims do not warrant *coram nobis* relief because the underlying facts to support his claims were known to him at the time of trial.

Additionally, Barrow has had the opportunity to raise these ineffective assistance of trial and appellate counsel claims before the district and appellate courts which were rejected by these courts. *See, Barrow v. United States,* 1997 WL 31427 at **6-7 (The district court did not abuse its discretion in denying a new trial on the basis that defendant's trial counsel was ineffective); *Barrow v. United States,* 2001 WL 278676 at **2 ("Barrow has not demonstrated that his counsel's failure to raise this issue was an unreasonable strategic decision under the circumstances, especially since counsel did raise ten issues on appeal.").

### E.    Claim IX:  Cumulative Effect

Because the Court finds Barrow is not entitled to *coram nobis* relief on the substantive claims raised by Barrow, his cumulative effect argument is without merit.

### F.    Motions to Take Judicial Notice

Barrow moves the Court to take judicial notice under Fed. R. Evid. 201 as to two opinions: *Boulware v. United States,* 128 S.Ct. 1168 (March 3, 2008) and *Barrow v. C.I.R.,* T.C. Memo. 2008-264, 2008 WL 5000112 (Nov. 25, 2008 U.S. Tax Ct.).

Federal Rule of Evidence 201 governs judicial notice of "adjudicative facts." Fed. R. Evid. 201(a). Kinds of facts under Rule 201 include:

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

20

Fed. R. Evid. 201(b).

The *Boulware* opinion is a decision issued by the United States Supreme Court which established a new rule of procedure regarding the allocation of the burden of proof in certain criminal tax cases.  The defendant in *Boulware* was prosecuted for tax evasion on a theory of corporate diversion where the defense was that the defendant retained no earnings because the funds he received were nontaxable returns of capital and, therefore, was not income to the defendant.  The Supreme Court held that a defendant in a criminal tax case does not need to show a contemporaneous intent to treat diversions as returns of capital before relying on those sections to demonstrate no taxes are owed.  *Boulware,* 128 S.Ct. at 1182.

The Supreme Court in *Teague v. Lane,* 489 U.S. 288 (1989) held that a new rule of criminal procedure does not apply retroactively to cases proceeding on collateral habeas review unless a class of conduct is decriminalized or is a "watershed" rule that implicates the fundamental fairness and accuracy of criminal proceeding.  *Saffle v. Parks,* 494 U.S. 484, 494-95 (1990).  The Supreme Court denied certiorari on Barrow's § 2255 motion.  *Barrow v. United States,* 531 U.S. 1114 (Jan. 16, 2001)(*cert. denied*)(Table).  Barrow's conviction was final.  The *Boulware* decision cannot be applied retroactively to Barrow's conviction.  In any event, the corporate diversion defense was not presented at Barrow's criminal trial.  *Barrow v. C.I.R.,* T.C. Memo. 2008-264, 2008 WL 50001112 at **12-13 (Barrow argued that the corporate diversion theory was not presented at the criminal trial.).

In *Barrow v. C.I.R.,* the issue before the Tax Court was whether Barrow and his firm were liable for tax deficiencies and associated penalties for the years 1984-89.  *Barrow v. C.I.R.,* T.C. Memo. 2008-264, 2008 WL 5000112 at *1.  The Tax Court noted that it does not have the power

to overturn his convictions. *Id.* at * 21.  Although the Tax Court found that the Government's position has changed between the criminal case and the civil case before the Tax Court, the Trial Court noted that the jury in the criminal case did not have to return a verdict detailing which items of income Barrow had not reported or which items of expense he had not substantiated and that the Commissioner's burden before the Tax Court was lower than the beyond a reasonable doubt burden in the criminal trial. *Id.* at *12.  The Tax Court further found that the issue of whether or not Barrow evaded tax in 1985, 1987 and 1988 was actually litigated in the criminal case in favor of the Government. *Id.* at *13.  The Court finds that the Tax Court's findings of fact do not overturn any of the factual findings by the jury in Barrow's conviction.  The Tax Court addressed Barrow's tax liability in the context of a civil tax liability trial.

The Court will not take judicial notice of these two opinions pursuant to Fed. R. Evid. 201, other than noting that these two opinions were issued by these two courts.  The findings in these two opinions are offered for the truth of the matter asserted in the underlying convictions which were disputed at trial and which the Government does not agree to at this juncture of the proceedings. The Sixth Circuit has stated that a district court does not abuse its discretion when it fails to notice the findings of a judgment by another court because such findings were offered for the truth of the matter asserted in the judgment and disputable under Fed. R. Evid. 201. *See United States v. Collier,* Case No. 02-3081, 2003 WL 21524099, 68 Fed. Appx. 676 (6th Cir. Jul. 2, 2003)(unpublished).

### G.    Expungement of Record

The title of the Petition mentions expungement of the record.  In *United States v. Doe,* 556 F.2d 391, 393 (6th Cir. 1977), the Sixth Circuit, denying expungement, stated in *dicta* that federal courts have "inherent equitable powers ... to order the expungement of a [criminal] record in an

appropriate case." Since *Doe,* the Sixth Circuit has noted that it had not put forward a standard to resolve which cases are "appropriate," but has stated that the power is to be used "only in extreme circumstances." *United States v. Robinson,* 79 F.3d 1149, 1996 WL 107129, *1 (6th Cir. Mar. 8, 1996). The power to expunge has been invoked with regard to "illegal convictions, convictions under statutes later deemed unconstitutional, and convictions obtained through government misconduct." *Id.* at *2. Courts have not granted expungement based on the inability to obtain employment, to legally possess a firearm, or to become a lawful citizen of the United States, even though the defendant has attained many accomplishments since the conviction and has lived a law abiding life. *See United States v. Saah,* 2007 WL 734984 (E.D. Mich. Mar. 8, 2007); *United States v. Ursery,* 2007 WL 1975038 (E.D. Mich. Jul. 2, 2007); *United States v. Lind,* 2006 WL 2087726 (E.D. Mich. Jul. 25, 2006).

Based on the circumstances of this case, it is not appropriate to expunge Barrow's record and convictions at this time.

## III.    CONCLUSION

Based on the various filings by Barrow in this criminal action and other post-verdict motions and causes of actions filed, Barrow has been tenacious in testing the validity and constitutionality of his criminal convictions. A demand that law and procedure be properly followed is not without merit. However, the Writ of Error *Coram Nobis* is an extraordinary writ and arguments which were raised or could have been raised on direct appeal or presented in a 28 U.S.C. § 2255 proceeding cannot be brought in a *coram nobis* proceeding. *See, e.g., Blanton,* 94 F.3d at 230. Barrow's current arguments have been previously raised before the trial court and the Court of Appeals, in one form or another. The Court has not found that an error of fact, which was unknown to Barrow at the time

23

of trial, of a fundamentally unjust character that could have altered the outcome of the criminal trial, if such fact had been known at trial.  For the reasons set forth above, the Court finds that Barrow is not entitled to the extraordinary *coram nobis* relief requested.

Accordingly,

IT IS ORDERED that the Petition and Motion to Set Aside Judgment and Expunge the Record in the Nature of a Writ of Error *Coram Nobis* **(No. 266, 12/20/2007)** is DENIED.

IT IS FURTHER ORDERED that the Motion to Vacate Sentence under 28 U.S.C. § 2255, considered as a Writ of Error *Coram Nobis* **(No. 268, filed 1/8/2008)** is DENIED.

IT IS FURTHER ORDERED that the Motion for Extension of Time to File Response/Reply as to Motion to Vacate Sentence under 28 U.S.C. § 2255, Order Requiring Responsive Pleading **(No. 271, filed 2/5/2008)** is GRANTED.

IT IS FURTHER ORDERED that the Motion for Extension of Time to File Response/Reply as to Response to Motion **(No. 276, filed 3/11/2008)** is GRANTED.

IT IS FURTHER ORDERED that the Motion to Take Judicial Notice of Holding by the United States Supreme Court **(No. 277, filed 3/17/2008)** is DENIED.

IT IS FURTHER ORDERED that the Second Motion for Extension of Time to File Response/Reply as to Response to Motion **(No. 278, filed 3/20/2008)** is GRANTED.

IT IS FURTHER ORDERED that the Motion to Take Judicial Notice of Holding by the United States Tax Court **(No. 284, filed 12/3/2008)** is DENIED.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  September 24, 2009

24

I hereby certify that a copy of the foregoing document was served upon Tommy Joe Barrow, 630 Newport, Detroit, MI 48215 and counsel of record on September 24, 2009, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager